[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11187

_____

OMAR SANTOS,
on behalf of themselves and all others
similarly situated,
AMANDA CLEMENTS,
on behalf of themselves and all others
similarly situated,

Plaintiffs-Appellants,

*versus*

HEALTHCARE REVENUE RECOVERY
GROUP, LLC.,
d.b.a.
ARS Account Resolution Services,

2                    Opinion of the Court                22-11187

                                                       Defendant,

EXPERIAN INFORMATION SOLUTIONS,
INC.,

                                                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23084-KMW

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit
Judges.

PER CURIAM:

     We grant the petition for panel rehearing, vacate our prior
opinion reported at 85 F.4th 1351 (11th Cir. 2023), and substitute
the following opinion making some minor changes to Part III.

                         *   *   *   *

     Where a consumer reporting agency willfully fails to com-
ply with the requirements imposed on it under the Fair Credit Re-
porting Act, a consumer has two options to recover damages.  The
first option allows a consumer to recover "any actual damages sus-
tained by the consumer as a result of the failure."   15 U.S.C.

§ 1681n(a)(1)(A).  And the second option allows a consumer to re-
cover "damages of not less than $100 and not more than $1,000."
*Id.*  The issue in this case is whether, under the second option, the
consumer can recover "damages of not less than $100 and not more
than $1,000" without proving actual damages caused by the con-
sumer reporting agency's willful violation of the Act.  Joining every
other circuit to address the same issue, we conclude that a con-
sumer does not have to prove actual damages to recover statutory
damages under the second option.  Because the district court
reached the opposite conclusion and denied class certification as a
result, we vacate the district court's class certification order and re-
mand for further proceedings.

## I.

Experian Information Solutions, Inc. is a "consumer report-
ing agency," meaning it receives consumers' credit data from ap-
proved furnishers and compiles that information into files summa-
rizing consumers' credit histories.  Experian provides these sum-
maries in the form of "reports," known as "disclosures" when the
reports are sent to the consumer directly, listing every credit and
collection account a consumer has incurred.  Each account on
these reports is known as a "tradeline."

Healthcare Revenue Recovery Group, LLC is a debt collec-
tion company that obtains accounts in default, known as collection
accounts, from medical providers.  In 2017, Healthcare Revenue
began furnishing its collection account data to Experian, but

Experian misadjusted a technical setting that affected how it processed Healthcare Revenue's data.

That faulty setting caused all consumer reports featuring Healthcare Revenue accounts to display inaccurate "dates of status" or "payment level dates" on the Healthcare Revenue tradelines. These status date fields are supposed to show the date when an account reached its currently reported status. For collection accounts, like the ones Healthcare Revenue reported to Experian, the status dates should generally reflect the date a consumer's debt entered collections. The status date usually shouldn't change because once a debt collector opens a collection account the account's status remains the same until the debtor makes a payment or the Act requires consumer reporting agencies to stop reporting the account. But, because of Experian's technical error, the status dates on the Healthcare Revenue tradelines in consumers' credit reports improperly updated each month to display the current month.

This error continued for more than a year and a half before Experian detected and corrected it. When Experian's employees finally noticed the error, they worried about the impact it would have on credit scores, consumer disputes, and automated Experian reporting products.

All told, more than 2.1 million consumers had credit reports with inaccurate Healthcare Revenue status dates sent by Experian to third parties. Among those consumers were Mr. Santos and Ms. Clements. Their July 2017 consumer disclosures list incorrect status dates of July 2017 for their Healthcare Revenue tradelines and

state that this credit information was "shared with" their "current and prospective creditors and employers." Although Mr. Santos's and Ms. Clements's credit scores weren't lowered by these errors, consumers' creditworthiness can nevertheless be affected by how long an account has been in collection—with more recent collection accounts having a greater negative impact.

Mr. Santos and Ms. Clements filed a class action complaint and sought to represent a class of individuals whose Healthcare Revenue tradelines had been wrongly "re-aged" by Experian. They alleged that Experian "willfully" violated its obligation under the Fair Credit Reporting Act to "follow reasonable procedures" to ensure consumer credit reports were prepared with "maximum possible accuracy" when it allowed credit reports to reflect allegedly inaccurate status dates. *See* 15 U.S.C. §§ 1681e(b), 1681n(a)(1)(A). And they sought "damages of not less than $100 and not more than $1,000" for Experian's willful violation of the Act. *See id.* § 1681n(a)(1)(A).

Experian eventually moved for summary judgment. It did not dispute that Mr. Santos's and Ms. Clements's credit reports listed inaccurate status dates for their Healthcare Revenue tradelines. But it argued that the Act's damages provision for willful violations—section 1681n(a)(1)(A)—required Mr. Santos and Ms. Clements to prove that they were denied credit, and incurred actual damages, as a result of the re-aged status dates. Because they didn't show a genuine dispute of any actual damages, Experian argued that it was entitled to summary judgment. Mr. Santos and

Ms. Clements responded that section 1681n(a)(1)(A) allowed consumers to recover "damages of not less than $100 and not more than $1,000" without having to prove, as an element of their claim, that they incurred actual damages. The district court, relying on our decision in *Cahlin v. General Motors Acceptance Corporation*, 936 F.2d 1151 (11th Cir. 1991), concluded that section 1681n(a)(1)(A) required proof of actual damages. But the district court denied Experian's summary judgment motion because there was some evidence that Mr. Santos and Ms. Clements suffered actual damages.

After the close of discovery, Mr. Santos and Ms. Clements moved to certify a class of all consumers "whose Experian credit reports had an account or accounts reported by [Healthcare Revenue] with an inaccurately displayed Date of Status and were viewed by one or more third-parties." They argued they met the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) and the predominance and superiority requirements of Rule 23(b). As to the predominance requirement, Mr. Santos and Ms. Clements rehashed their summary judgment argument that, because the class only sought "damages of not less than $100 and not more than $1,000," they did not have to prove any actual damages caused by Experian's willful violation of the Act. Thus, "any individualized issues concerning class members' actual damages" were "irrelevant." Experian, in response, argued that because section 1681n(a)(1)(A) required that the putative class members prove they were actually injured by a consumer reporting agency's willful violation of the Act, each class

member's individual proof of damages would predominate over common questions.

The magistrate judge agreed with Experian that Mr. Santos and Ms. Clements hadn't met the predominance requirement in Rule 23(b). That's because, the magistrate judge explained, the district court had already concluded in its summary judgment order that section 1681n(a)(1)(A) required consumers to prove they incurred actual damages as a result of willful violations of the Act. And because the putative class members would have to prove they incurred actual damages because of the re-aged status dates, the magistrate judge concluded that the district court would be required to engage in "an individual and highly factual determination" as to whether each class member suffered actual damages. With the predominance requirement unmet, the magistrate judge recommended denying Mr. Santos and Ms. Clements's class certification motion and did not reach the other Rule 23 class certification requirements. The district court adopted the magistrate judge's recommendation and denied class certification.

Mr. Santos and Ms. Clements petitioned for permission to appeal the district court's class certification order under Rule 23(f). *See* Fed. R. Civ. P. 23(f) ("A court of appeals may permit an appeal from an order granting or denying class-action certification . . . ."). They sought permission to appeal the district court's conclusion that section 1681n(a)(1)(A) required them to prove they incurred actual damages "to prevail on their claims seeking statutory

damages for willful violations" of the Act. We granted permission, and this is their appeal.

## II.

"Whether a plaintiff has standing to sue is a threshold jurisdictional question that we review *de novo*." *MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1238 (11th Cir. 2023). "We review orders denying class certification for abuse of discretion. Nonetheless, whether the district court applied the correct legal standard in reaching its decision on class certification is a legal question that we review *de novo*." *Murray v. U.S. Bank Tr. Nat'l Ass'n*, 365 F.3d 1284, 1288–89 (11th Cir. 2004) (cleaned up). "The district court abuses its discretion if it 'applies the wrong legal standard, follows improper procedures in making its determination, bases its decision on clearly erroneous findings of fact, or applies the law in an unreasonable or incorrect manner.'" *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11th Cir. 2023) (quoting *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014)).

## III.

We begin with our jurisdiction. Experian argues that Mr. Santos and Ms. Clements lack Article III standing to bring this action because they failed to prove that they suffered a concrete injury in fact. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and

particularized and actual or imminent, not conjectural or hypothetical." (quotation omitted)).  We disagree.

Intangible harms are concrete if they bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  And violating the Fair Credit Reporting Act by "reporting . . . inaccurate information about [a consumer]'s credit . . . has a close relationship to the harm caused by the publication of defamatory information." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017).  The consumer need not prove "that the false reporting caused his credit score to plummet; the false reporting itself [i]s the injury." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021).  Because the record contains evidence that Experian inaccurately reported to creditors that Mr. Santos's and Ms. Clements's accounts entered collections more recently than they did, the plaintiffs have standing.  *See id.* at 943–44 ("repeatedly report[ing] a non-existent delinquent mortgage debt on [the plaintiff's] credit report to third parties" was an Article III injury).

Of course, "[b]ecause the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff[s'] case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (omission in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  For example, "if an action proceeds to trial, the facts necessary to establish standing 'must be supported

adequately by the evidence adduced at trial.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

## IV.

We turn now to the question of statutory construction, and "[a]s in any case of statutory construction, our analysis begins with the language of the statute." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1161 (11th Cir. 2021) (quotation omitted). The Fair Credit Reporting Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in consumers' credit reports. 15 U.S.C. § 1681e(b). The Act creates a private right of action for consumers against "[a]ny person who willfully" violates the Act. *Id.* § 1681n(a).

Before 1996, the private right of action in section 1681n(a)(1)(A) only had an option for consumers to recover damages for actual damages they suffered as a result of the willful violation. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) (citing Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 2412, 110 Stat. 3009, 3009-446 (1996)). But Congress amended the Act in 1996 to provide a second option—"damages of not less than $100 and not more than $1,000." *Id.* (quoting Omnibus Consolidated Appropriations Act, 1997 § 2412). As amended, section 1681n(a)(1)(A) allows a consumer to recover "[1] any actual damages sustained by the consumer as a result of the failure *or* [2] damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added).

In other words, as the Supreme Court explained in *Spokeo*, section 1681n(a)(1)(A) allows a consumer to recover "either [1] actual damages or [2] statutory damages of $100 to $1,000." 578 U.S. at 335 (quotation omitted).

This case is about whether the term "damages" in the second option requires a consumer to prove that he's suffered actual damages because of a willful violation. Mr. Santos and Ms. Clements argue that the second option does not require proof of actual damages. But Experian insists that Congress made recovery under both options contingent on a showing of actual damages, and "damages" under the second option are reserved for consumers who incur actual damages but either can't prove the precise amount of damages or suffered less than $100 in actual damages.

We read the statute the same way Mr. Santos and Ms. Clements do—consumers may seek statutory damages under the second option of section 1681n(a)(1)(A) without showing actual damages.

*A.*

To answer whether section 1681n(a)(1)(A) allows a consumer to recover "damages" without proving actual damages, we must determine the "ordinary meaning" of "damages" as used in the second option. *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("[O]ur job is to interpret the words consistent with their ordinary meaning at the time Congress enacted the statute." (alteration adopted) (quotation omitted)). When looking at the word in isolation, "damages" had two possible meanings in 1996. It could mean the "[m]oney . . . ordered to be paid to[] a

person as compensation for loss or injury," *Damages*, *Black's Law Dictionary* (7th ed. 1999), as Experian contends. (This definition requires actual damages.) And "damages" could mean "the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong," *id.* (quoting Frank Gahan, *The Law of Damages* 1 (1936)), as Mr. Santos and Ms. Clements argue. (This definition does not require actual damages, just a violation.)

But, "[t]o determine the ordinary meaning of a term," "[w]e do not look at [it] in isolation." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (second alteration in original) (quotation omitted). "[I]nstead we look to the entire statutory context" to "ascertain the plain meaning of a statute." *Id.* So that's what we'll do here. We will look at the entire statutory context of the Act to determine the ordinary meaning of "damages" as used in the second option.

First, we look to the different language used in the first and second options. The first option, for example, allows consumers to recover "actual damages," *see* 15 U.S.C. § 1681n(a)(1)(A), which are defined as damages that "compensate for a *proven injury or loss*." *Actual Damages*, *Black's Law Dictionary* (7th ed. 1999) (emphasis added). The first option then emphasizes that the "actual damages" must be "sustained by the consumer" before the consumer can recover them. 15 U.S.C. § 1681n(a)(1)(A). And the first option has a causal element that links the consumer's actual damages to the consumer reporting agency's conduct. The consumer can only

recover damages "sustained . . . *as a result*" of the consumer report-ing agency's willful violation of the Act. *Id.* (emphasis added).

But the second option doesn't have any of these require-ments. The second option allows consumers to recover "damages" even if their damages are not "*actual* damages," *see id.* (emphasis added), that is, even if they do *not* "compensate for a proven injury or loss," *Actual Damages*, *Black's Law Dictionary* (7th ed. 1999). Con-sumers can recover "damages" even if they are not "sustained by the consumer." *See* 15 U.S.C. § 1681n(a)(1)(A). And there is no causal element like in the first option. *Id.*

"When Congress uses different language in similar sections, we should give those words different meanings." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (quotation omitted). That's what we will do here. "[B]ecause Con-gress generally acts intentionally when it uses particular language in one section of a statute but omits it in another," *Dep't of Home-land Sec. v. MacLean*, 574 U.S. 383, 391 (2015), we read the omission of "actual," "sustained by the consumer," and "as a result of the failure" to mean that the second option doesn't require these things, *see id.* ("Congress's choice to say 'specifically prohibited by law' rather than 'specifically prohibited by law, rule, or regulation' suggests that Congress meant to exclude rules and regulations."). By removing these requirements, section 1681n(a)(1)(A) doesn't re-quire that the "damages" under the second option be "actual dam-ages," that they be "sustained by the consumer," or that they be "a result of" the willful violation.

Second, we consider the "or" between the first and second options. 15 U.S.C. § 1681n(a)(1)(A). The "ordinary use" of "or" "is almost always disjunctive," and *the words it connects are to be given separate meanings." United States v. Woods*, 571 U.S. 31, 45 (2013) (emphasis added) (quotation omitted). So when Congress uses "or" to separate two provisions in a statute, "it signal[s] that the two are alternatives." *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022).

Reading the second option as allowing for statutory damages without proof of actual damages gives the two options "separate meanings." The first option allows the consumer to recover for his actual damages. And the second option allows the consumer to recover a minimum amount of "damages of not less than $100 and not more than $1,000" for willful violations, even without actual damages.

Third, we compare the language in section 1681n(a)(1)(A) to the rest of the Act. Like for willful violations, the Act provides a cause of action for negligent violations. 15 U.S.C. § 1681o(a). But the negligent-violation provision "exclude[s] the statutory-damages option" found in section 1681n(a)(1)(A). *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 706 (6th Cir. 2009). Instead, for negligent violations, a consumer can only recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). This difference between the negligent- and willful-violation provisions "buttresses the point" that the Act allows for statutory damages without proof of actual damages where the

consumer reporting agency commits more serious willful violations. *See Beaudry*, 579 F.3d at 705–06. But for less serious negligent violations, the Act requires proof of actual damages to recover damages.

Fourth, we look to the title of the second option. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (quotation omitted)). In 1996, Congress added the second option to allow consumers to recover "damages of not less than $100 and not more than $1,000." *See Mexican Specialty*, 564 F.3d at 1306 (quoting Omnibus Consolidated Appropriations Act, 1997 § 2412). The new option had the title, "Minimum Civil Liability for Willful Noncompliance" with the Act. Omnibus Consolidated Appropriations Act, 1997 § 2412(b). The title shows that the second option was added to section 1681n(a)(1)(A) to set a minimum liability threshold for willful violations, even if the consumer did not meet the requirements for actual damages under the first option.

And fifth, we consider how we've read similar language in other federal statutes. *See Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [section] 718 and [section] 204(b) is, of course, a strong indication that the two statutes should be interpreted pari passu."). In the Truth in Lending Act, for example—another federal consumer protection statute—we've read similar damages language in a similar way.

Like the Fair Credit Reporting Act, the Truth in Lending Act allows a person to recover "any actual damage sustained by such person as a result of the failure," or a statutory minimum amount—for example, "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000." 15 U.S.C. § 1640(a)(1)–(2)(A)(i).  This minimum amount, we've explained, shows that "Congress granted consumers a minimum recovery . . . without having to prove actual damages." *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1181 (11th Cir. 1982).  There are other examples.  *See, e.g.*, *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (understanding the Communications Act of 1934 and the Copyright Act of 1976 to allow for "statutory damages . . . whether or not adequate evidence exists as to the actual damages incurred by plaintiffs"); *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 967–71 (11th Cir. 2016) (indicating that the Wiretap Act "authorize[s] an award of statutory damages in the absence of an award for actual damages").

Our Fair Credit Reporting Act caselaw is consistent with our conclusion that the second option does not require a consumer to prove he suffered actual damages.  In *Levine v. World Financial Network National Bank*, the plaintiff sued a consumer reporting agency for willfully violating the Act.  437 F.3d 1118, 1123 (11th Cir. 2006). The district court dismissed the suit because the plaintiff's complaint hadn't sought damages under the second option and his claimed injuries were "too amorphous" to recover actual damages under the first option.  *Id.* at 1120 (quotation omitted).  We

reversed, determining that, contrary to the district court's reading, the plaintiff's complaint had sought "damages of not less than $100 and not more than $1,000." *Id.* at 1123–25. And because the plaintiff stated a prima facie claim under section 1681n(a)(1)(A) and sought damages under the second option, there was no need for us to examine the plaintiff's alleged injuries since the plaintiff's allegation of willful noncompliance with the Act was itself an injury that section 1681n "clearly recognize[d] as compensable." *Id.* at 1124–25; *see also Mexican Specialty*, 564 F.3d at 1309 (explaining that the Act allows the "recovery of statutory damages [by] those individuals who did not suffer actual damages").

Finally, our reading is consistent with how the other circuits have read section 1681n(a)(1)(A). Every circuit to address the same issue agrees that "the plain language of the provision permits recovery of statutory damages in the absence of actual damages." *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 499–500 (8th Cir. 2014) ("[W]e cannot locate a single case that interprets the [Act's] liability provision as requiring something more than a statutory violation in order to recover 'damages of not less than $100 and not more than $1,000.'"), *abrogation on other grounds recognized by Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957 (8th Cir. 2019); *see also Beaudry*, 579 F.3d at 705–06 ("[B]ecause the statute permits a recovery when there are no identifiable or measurable actual damages . . . a claimant need not suffer (or allege) consequential damages to file a claim."); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("[T]he Fair Credit Reporting Act provide[s] for modest damages without proof of injury."); *Robins v. Spokeo, Inc.*, 867 F.3d 1108,

1110–11 (9th Cir. 2017) ("The statute gives consumers . . . the right to sue (and to recover statutory damages) for willful violations even if the consumer cannot show that the violation caused him to sustain any actual damages."); *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) ("Under [section] 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover . . . statutory damages ranging from $100 to $1,000."). We join the other circuits and hold that the second option of section 1681n(a)(1)(A) does not require proof of actual damages.

*B.*

Experian offers five counterarguments, but we are unconvinced.

First, Experian contrasts section 1681n(a)(1)(A) with the section that directly follows it. Like its neighbor, section 1681n(a)(1)(B) also offers alternate recovery options, but it doesn't use the term "damages" in the second option. Instead, section 1681n(a)(1)(B) allows a consumer to recover either "actual damages sustained by the consumer . . . or $1,000, whichever is greater," when a person obtains a consumer's report under false pretenses or knowingly without a permissible purpose. 15 U.S.C. § 1681n(a)(1)(B). Experian contends that Congress's omission of the word "damages" from section 1681n(a)(1)(B)'s second option shows that consumers may recover damages even if they haven't incurred actual damages. And if Congress wanted to provide the same option to consumers in section 1681n(a)(1)(A), Experian

argues, it would have drafted section 1681n(a)(1)(A)'s second option the same way.

We don't find this minor difference meaningful. "[B]ecause Congress sometimes uses slightly different language to convey the same message," we cannot "place too much emphasis on the marginal semantic divergence between," *DePierre v. United States*, 564 U.S. 70, 83 (2011) (quotation omitted), the phrases "$1,000, whichever is greater," 15 U.S.C. § 1681n(a)(1)(B), and "damages of not less than $100 and not more than $1,000," *id.* § 1681n(a)(1)(A). "[T]here is no 'canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing,'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 845–46 (2018) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013)), and Experian hasn't pointed us to one. That's what we do here with these two nearly identical provisions. Both entitle consumers to a minimum amount of statutory damages—they just do so using slightly different language.

Second, Experian argues our decision in *Cahlin* controls this case. To be sure, *Cahlin* concluded that a consumer alleging a willful violation of the Act must show that an inaccurate credit report "caused him harm." 936 F.2d at 1160–61 (affirming summary judgment for the consumer reporting agency because the consumer had "utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate . . . credit report"). But *Cahlin* was decided in 1991, five years before Congress added the second option to section 1681n(a)(1)(A). *See Mexican*

*Specialty*, 564 F.3d at 1306 (citing Omnibus Consolidated Appropri-
ations Act, 1997 § 2412). "[W]e are not bound by the prior prece-
dent rule when there is a clear change in the law by Congress."
*Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1043 n.7
(11th Cir. 2019) (quotation omitted). Because *Cahlin* "was based on
legislation that ha[s] been changed," it doesn't tell us whether the
second option—which didn't exist when *Cahlin* was decided—al-
lows for statutory damages in the absence of actual damages. *See
United States v. Woodard*, 938 F.2d 1255, 1258 n.4 (11th Cir. 1991); *see
also Beaudry*, 579 F.3d at 708 (characterizing *Cahlin* and other cases
that "predate the critical 1996 amendment" as "the least helpful"
when interpreting the second option). *Cahlin* didn't decide, and
couldn't have decided, that question.

    As Experian notes, we have continued to cite *Cahlin* since the
1996 amendment.[1]  But our post-amendment decisions citing
*Cahlin* did not hold that the second option required consumers to
prove actual damages. *See, e.g.*, *Losch*, 995 F.3d at 944 (noting, in
dicta, that a consumer must prove "damages followed as a result"
of the violation); *Erickson v. First Advantage Background Servs. Corp.*,
981 F.3d 1246, 1251–53 (11th Cir. 2020) ("Because [the plaintiff]'s
claim that the report was not maximally accurate cannot go on, we
need not consider the district court's independent ground for

---

[1] Experian cites a few unpublished cases, but "we are not bound by un-
published decisions." *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872
F.3d 1161, 1165 n.4 (11th Cir. 2017) (citing 11th Cir. R. 36-2).

granting judgment as a matter of law—that the report did not cause [him] harm.").

Third, Experian likens the Fair Credit Reporting Act to the Privacy Act of 1974, 5 U.S.C. § 552a(g)(4), which allows individuals to sue the federal government when it willfully mishandles their personal information. If a plaintiff prevails under the Privacy Act, the government is liable "in an amount equal to the sum of . . . actual damages sustained by the individual as a result of the refusal or failure, *but* in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* § 552a(g)(4)(A) (emphasis added). The Supreme Court has read the Privacy Act as requiring plaintiffs to "prove some actual damages to qualify for [the] minimum statutory award of $1,000." *Doe v. Chao*, 540 U.S. 614, 616 (2004). Experian argues that we should interpret section 1681n(a)(1)(A)'s second option the same way.

Experian's Privacy Act argument is misplaced because, unlike the minor differences between sections 1681n(a)(1)(A) and 1681n(a)(1)(B), the text of section 1681n(a)(1)(A) is simply "too far different from the language of the Privacy Act to serve as any sound basis for analogy." *See id.* at 626 (rejecting the plaintiff's attempt to liken the Privacy Act to the Tax Reform Act of 1976); *cf. Dacostagomez-Aguilar*, 40 F.4th at 1316 ("The flaw in [t]his argument starts with the word 'or,' which joins the relevant [text]. That conjunction is important . . . ."). Section 1681n(a)(1)(A)'s use of "or" "indicates alternatives and requires that those alternatives be treated separately." *See Dacostagomez-Aguilar*, 40 F.4th at 1316

(quotation omitted). That's why we read section 1681n(a)(1)(A) to offer a choice of two separate options. *See Hammer*, 754 F.3d at 500 (explaining that Congress described section 1681n(a)(1)(A)'s "permissible damages in the disjunctive, which indicates that a consumer can bring a claim to recover statutory damages 'of not less than $100 and not more than $1,000' as an alternative to a claim for actual damages").

In contrast, Congress's use of "but" in the Privacy Act doesn't indicate alternatives—it indicates an exception to a general rule. *See But, The American Heritage Dictionary of the English Language* (1969) ("With the exception that; except that."). The Privacy Act's general rule is that a plaintiff may recover his or her actual damages. The exception is that if those actual damages are less than $1,000, then the plaintiff is entitled to "a minimum statutory award of $1,000" for his actual damages. *See Doe*, 540 U.S. at 616. The use of "but" instead of the disjunctive in the Privacy Act makes the critical difference.

Fourth, Experian argues common law torts typically require proof of actual damages and our reading departs from that traditional rule. Experian is correct that "statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles." *United States v. Texas*, 507 U.S. 529, 534 (1993) (cleaned up). But our reading doesn't depart from the common law. To the contrary, section 1681n(a)(1)(A)'s second option is consistent with the common law. That's because, as we explained, the Act's common-law analog is

the tort of defamation. *Pedro*, 868 F.3d at 1279–80 ("[T]he reporting of inaccurate information about [a consumer's] credit . . . has a close relationship to the harm caused by the publication of defamatory information . . . ."). And defamation is a tort that doesn't condition recovery on "proof of pecuniary loss or physical harm." *See Doe*, 540 U.S. at 621 & n.3 (cleaned up); *see also* Restatement (First) of Torts § 559 cmt. d (Am. Law Inst. 1938) ("To be defamatory, it is not necessary that the communication actually cause harm . . . ."). We find nothing inconsistent between the common law and the Act allowing consumers who did not sustain actual injuries to seek statutory damages.

Experian's final argument is that allowing consumers to recover statutory damages absent actual damages "stretch[es] the statute far beyond Congress's design" by effectively making consumer reporting agencies strictly liable for "every trivial inaccuracy" in credit reports. But Experian's fears are unfounded. Congress made consumer reporting agencies liable for statutory damages, but only when the agencies *willfully* fail to "follow reasonable procedures to assure [the] maximum possible accuracy" of their reports. 15 U.S.C. §§ 1681e(b), 1681n. "The existence of a *willfulness* requirement proves that there is nothing 'strict' about the state of behavior required to violate the law." *Beaudry*, 579 F.3d at 708; *see also Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) ("The [Act] does not make consumer reporting agencies strictly liable for all inaccuracies, but instead creates a private right of action for . . . willful violations of the [Act].").

## V.

The denial of Mr. Santos and Ms. Clements's motion for class certification was an abuse of discretion because the district court's analysis of Rule 23(b)(3)'s predominance requirement was based on its contrary interpretation of the second option in section 1681n(a)(1)(A). Properly understood, a consumer alleging a willful violation of the Act doesn't need to prove actual damages to recover "damages of not less than $100 and not more than $1,000." While the parties raise other issues that may ultimately affect whether the class should be certified, the district court's order denying class certification only relied on its interpretation of section 1681n(a)(1)(A) and didn't address these other arguments. We think it best to allow the district court to address these arguments in the first instance on remand along with the remaining Rule 23 requirements. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000) ("[W]e should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review." (citation omitted)).

**VACATED AND REMANDED.**